W. T. GRANT CO. v. FLEMING, Temporary Controls Adm'r.

No. 369.

United States Emergency Court of Appeals.

Heard at New York City, Nov. 1, 1946.

Decided Feb. 11, 1947.

Charles W. Rivoire, of New York City (Eugene M. Foley, of New York City, on the brief), for complainant.

Josephine H. Klein, of Washington, D. C., (Richard H. Field, Gen. Counsel, Carl A. Auerbach, Associate Gen. Counsel, and William R. Ming, Jr., Chief, Court Review Price Branch, all of Washington, D. C., and Murray Steyer and Rosanna A. Blake, Attys., both of Brooklyn, N. Y., all of the Office of Price Administration on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

McALLISTER, Judge.

Complainant, W. T. Grant Company, is engaged in the business of operating low priced retail department stores, and, in its store in Denver, Colorado, involved in this proceeding, it operates a restaurant.

During April 1943, complainant offered for sale, and sold, certain seafood meals, which consisted of six fried oysters of a grade known in the trade as "small select". For such a meal, it charged 45 cents. Subsequently, the Administrator promulgated a regulation limiting the price that a restaurant might charge for a meal, to the highest price which it had charged for the same or a similar meal in the base period— between April 4 and April 10, 1943. Oysters were, by the regulation, placed in a classification of "Shell fish, including seafood platters and related stews." This classification, it is pertinent to add, also included shrimps. Under the regulation, therefore, a restaurant could not sell oysters and shrimps at a price higher than that which it had sold oysters or shrimps, between April 4 and April 10, 1943. No distinction in size, quality, or cost of the oysters, or shrimps, was provided for in the regulation. So that whether oysters or shrimps, which were sold, after issuance of the regulation, were larger, or of better quality, or cost more than those sold during the base period, made no difference in the price permitted to be charged. The same number of oysters or shrimps, sold under the regulations, could not be sold for more than the same number was sold for in the base period. Complainant, in the base period, had not sold shrimps.

However, in February, 1945, complainant offered for sale and sold in its Denver restaurant a meal at a cost of 60 cents, the principal ingredients of which consisted of six fried oysters of a grade known in the trade as "New York count." These oysters cost $7.00 per gallon as compared with the cost of $5.00 per gallon for the "small select" grade, which complainant had sold in its meals during the base period. Moreover the "New York count" oysters were about twice as large as the "small select" grade, and, accordingly, ran about half as many to the gallon as the smaller type. In addition to the meal of the large oysters, complainant also, in February 1945, offered for sale at 60 cents, a meal, the principal ingredient of which was six "Jumbo" French fried shrimps.

On January 10, 1946, the Administrator instituted civil suit against complainant in the District Court for the District of Colorado, alleging that, by the sales of the above described meals, commencing in February 1945, complainant had violated the regulation which limited the price permitted to be charged for such meals, to the highest price at which such meals were offered for sale in April 1943. Complainant defended the suit on the ground that such a price limitation was prohibited by the Emergency Price Control Act, as amended, 50 U.S.C.A. Appendix, § 901 et seq. The Administrator moved for summary judgment on the ground that the district court had no jurisdiction to determine the validity of the regulation. The court, in granting this motion, awarded judgment in the amount of $6.50, the aggregate of the alleged overcharge,

together with costs, at the same time, however, granting leave to the ·W. T. Grant Company to bring the question of the validity of the regulation to this court.

The issue, briefly stated, is whether the Act prohibits regulations limiting restaurants to the same prices which they charged during a prior base period.

We come, then, to a discussion of the price control legislation as it affected restaurants, as well as the various regulations of the administrative officials, which are claimed by the Administrator to govern the disposition of this case.

On April 28, 1942, the Price Administrator issued the General Maximum Price Regulation,[1] which was the basic determination, fixing commodity prices under the Emergency Price Control Act. That regulation expressly exempted from its operation sales by restaurants and similar establishments in the following language: "This Regulation shall not apply to the following sales or deliveries: * * * By hotels, restaurants, soda fountains, bars, cafes, or other similar establishments, of food or beverages prepared and sold for consumption on the premises." Section 1499.9(b)(5).

Prices charged by eating and drinking establishments remained free from regulation under the Emergency Price Control Act, as amended, and from all regulations, until the Administrator issued, on April 12, 1943, General Order No. 50.[2] This order imposed reporting requirements on such establishments and authorized Regional Administrators "to issue orders, in accordance with the provisions of the Emergency Price Control Act of 1942, as amended, establishing maximum prices for meals, food items, and beverages." Regional Administrators were also authorized to delegate authority under General Order 50 to state directors and managers of district offices. As a result, many regional and district regulations were issued, including Restaurant Maximum Price Regulation No. 7-1[3] covering Colorado, where complainant's store and restaurant are located.

The above mentioned regulation, issued on April 24, 1943, for Colorado, provided that no ceiling price for food items, or a meal, should be higher than the highest price line at which the item had been offered for sale in a certain prior period. Later, on June 29, 1944, national Restaurant Maximum Price Regulation No. 2[4] was issued, which superseded, as of July 31, 1944, all regional and district regulations. This new national regulation provided that no ceiling price for a food item or a meal should be higher than the highest price at which such items had been offered for sale in a stated prior period.

After the issuance of these regulations, providing that restaurants, hotels, and similar eating establishments be limited in the prices they charged for meals and food items to the highest price line at which they had offered those items and meals in a prior period, Congress, by the Stabilization Extension Act of 1944, added a sub-section, designated as Section 2(k) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A. Appendix, § 902(k), which provided:

"No regulation, order, or price schedule issued under this Act shall, after the effective date of this subsection, require any seller of goods at retail to limit his sales with reference to any highest price line offered for sale by him at any prior time."

The Emergency Price Control Act was amended by the foregoing section on the day after Restaurant Maximum Price Regulation No. 2 was issued; and the new section of the statute became effective on July 1, 1944. The foregoing constitutes all of the price control legislation and regulations immediately pertinent to this case.

As has been said, the suit instituted by the Administrator in the District Court in Colorado, against complainant for violation of the regulation, was based upon serving meals at prices in excess of the highest price at which they were offered in April, 1943. It was alleged that such sales or service of meals had been made in February, 1945, and thereafter. The amendment enacted by Congress (Sec. 2(k) of the Emergency Price Control Act of 1942 as amended), which provided that no regulation,

---

[1] 7 F.R. 3153.
[2] 8 F.R. 4808.
[3] 8 F.R. 6059.
[4] 9 F.R. 7263.

order, or price schedule should require any seller of goods at retail to limit his sales with reference to any highest price line offered for sale at any prior time, became effective July 1, 1944. If the language of the amendment, with respect to a "seller of goods at retail" is to be construed as embracing a restaurant selling or serving meals to the public, then the regulation of the Administrator, limiting such sellers to the highest price lines charged in any prior period is in conflict with the Act itself.

Accordingly, if complainant, in its restaurant business, is to be considered a "seller of goods at retail," within the meaning of the above sub-section of the statute, the Act does not require it to limit its sales to meals and food items with reference to any highest price line to which such meals or items were offered for sale at a prior time. In fact, if it is such a seller of goods, Restaurant Maximum Price Regulation No. 2, in so far as it seeks to impose a highest price line limitation upon complainant as a restaurant, is invalid, because such a regulation is expressly prohibited by Section 2(k) of the Act.

It is contended by the Administrator that complainant, in the conduct of its restaurant business, was not a "seller of goods at retail" within the intendment of Section 2(k) of the Act, but was rather an operator of a service establishment, and as such, was subject to a "highest price line" limitation in the sale of its meals and food items, as provided for by Restaurant Maximum Price Regulation No. 2.

The sole issue in the case, then, is whether complainant is a "seller of goods at retail" within the meaning of Section 2(k) of the Emergency Price Control Act, and, therefore, exempt from the highest price line limitations provided for in Restaurant Maximum Price Regulation No. 2.

Much of the argument of counsel is devoted to the contention that the inferences to be drawn from the legislative history of price control determine the question whether a restaurant operator is a seller of goods at retail, or an operator of a service establishment. Moreover, it is sought by the Administrator to establish by the rulings of

adjudicated cases, that restaurants are engaged in the rendition of services in connection with the dispensing of food. Complainant on the contrary asserts that restaurants are sellers of food at retail. Common law concepts, administrative definitions with respect to other statutes, and rulings by the departmental agencies of the federal government, are cited by the Administrator in support of the contention that a restaurant is not a seller of goods at retail, but rather a service establishment.

However, we are of the opinion that the language used by the Administrator in his various restaurant regulations, and his statements of considerations and the construction reasonably to be given to them, as well as the definitions therein contained, which, it must be assumed Congress had in mind in its subsequent legislation on the subject, are here determinative of the issue.

In the General Maximum Price Regulation,[5] issued in April, 1942—the first regulation on the entire subject of food served by hotels, restaurants, cafes and similar establishments— it was provided, as mentioned heretofore in this opinion, that it did not apply to *sales* of *food* or beverages by hotels, restaurants, soda fountains, cafes, or other similar establishments, for consumption on the premises. These specific exemptions from the regulations of the Administrator of foods sold by such establishments for consumption on the premises, were contained in Revised Supplementary Regulation No. 1,[6] issued in April, 1943, in which it was provided: "Sec. 3.2. Transactions Excepted. The following transactions are excepted from the General Maximum Price Regulation, either absolutely, or where the exception is qualified, upon the condition and to the extent indicated: * * * (c) Sales and deliveries by hotels, restaurants, soda fountains, bars, cafes, caterers, or other similar eating establishments, of meals, servings of food portions customarily served separately, or as a part of a meal * * *".

The above provisions, referring to the sales of food by hotels, restaurants and similar establishments, are all to be found in the Administrator's regulations prior to

---

[5] 7 F.R. 3153, Sec. 1499.9(b) (5).     [6] 8 F.R. 4978.

the promulgation of Restaurant Maximum Price Regulation No. 2, in 1944, upon which the Administrator here relies. This later revised regulation refers to the taxes paid by restaurant businesses, as taxes on the "sale of food," or "on the business of selling food" (Sec. 11). It defines an eating establishment as a place where meals are sold; "meal" as "a combination of food items sold at a single price"; "a food item" as being "an article or portion of food sold by an eating establishment to be eaten there or outside"; "offer", as being an "offer for sale"; "sale", as including the service of food for a consideration on or about the premises. (Sec. 19) The regulation also contains prohibitions against the sale of any meal or food item at a price higher than the ceiling price established by the regulation (Sec. 12); and that, in case a license to sell is suspended, "you may not make any sale for which your license is suspended." (Sec. 20) Moreover, in the statement of considerations involved in the issuance of the regulation here in question, the Administrator speaks of the "prices of meals, food items, and beverages *sold* by eating or drinking establishments for immediate consumption," and also of the "sale of prepared foods by eating and drinking places," and declares that if an establishment fails to comply, "it is prohibited from selling and delivering or offering to sell or deliver meals, food items or beverages, for which it has not made a proper filing. * * *".

All of the foregoing references, in the language of the Administrator himself, to restaurants and their business of providing food at a price to the public, as sales of food and meals, strongly tend to the conclusion that the Administrator considered such transactions as retail sales to the public. In addition, the Administrator prior to the issuance of Restaurant Maximum Price Regulation No. 2, here in controversy, defined in the prior Maximum Price Regulation 391 the meaning of "Retailers" as follows: "Retailer means any person, group of persons, firms or corporation other than a route-seller purchasing a commodity listed in Appendix A for resale to ultimate consumers. It includes *restaurants, cafes, cafeterias, hotels and all other eating places*

purchasing a commodity listed in Appendix A for resale or distribution to their consumers * * *". (Emphasis supplied.)

With this extensive background of language in respect to restaurants, food items, meals, sales and retailers, which was recognized, adopted and used by the Administrator himself for price control purposes, the only reasonable conclusion to be drawn is that Congress did not intend to exclude restaurants from the scope and application of Sec. 2(k) of the Emergency Price Control Act of 1942, as amended. When, for price control purposes, the Price Administrator has defined a restaurant as being a "retailer," it is to be assumed that the Congress thereafter legislating on that subject intended the same meaning to be given to the term, "seller of goods at retail," especially in view of the manifold use of similar language to the same effect in all the other pertinent regulations, and statement of considerations. In so construing the statute, we are constrained to hold that Sec. 2(k) prohibited regulations by the Administrator, requiring restaurants to limit their sales with respect to the highest price lines at any prior period.

Tenuous arguments are advanced by counsel for the Administrator to the effect that additional provisions of Maximum Price Regulation 319 distinguish between retailers who sell for consumption on the premises, and retailers who sell for consumption off the premises, and that, whether such transactions were covered by the General Maximum Price Regulation and whether such establishments were required to establish maximum prices under that regulation, depended upon the extent of the preparation or processing of the food involved, by eating establishments,—or whether the commodities sold were to be consumed on, or off, the premises. All of this may well be true, but it is entirely irrelevant to the issue here before us, for the regulation itself provides that all sellers, including restaurants, are retailers; and it must have been, and was, upon this definition and understanding that Congress prohibited regulations requiring sellers of goods at retail to limit their sales with reference to their highest price lines at any prior period.

In accordance with the foregoing, a judgment will be entered, determining and declaring that Sections 1(b)(2) and 1(d) of Restaurant Maximum Price Regulation No. 2 are, and at the time the alleged overcharges which were made by the complainant in these cases, were, invalid, to the extent that they provided for a limitation of sales with reference to any highest price lines at which a meal, food item, or beverage of the same class, was offered for sale at any prior period.